### SWENSON *v.* HALBERG and another.

*(Circuit Court, D. Minnesota.* March, 1880.)

FORECLOSURE BY ADVERTISEMENT—NOTICE OF SALE—CLAIM FOR ATTORNEY'S FEES.—The insertion of a claim for $50, for attorney's fees, in the published notice of a foreclosure sale, under a statute of the state of Minnesota, where the mortgage only stipulated for the payment of $25 for attorney's fees, in the event of such foreclosure, will not invalidate a sale made in accordance with such notice, in the absence of fraud and prejudice to the mortgagor or owner of the equity of redemption.

SAME—SALE OF SEVERAL TRACTS IN ONE PARCEL.—The sale of several tracts in one parcel, contrary to the provisions of such statute, will not be disturbed, in the absence of fraud and prejudice to the mortgagor or owner of the equity of redemption.

HOMESTEAD—SALE UNDER FORECLOSURE—REDEMPTION BY ASSIGNEE IN BANKRUPTCY.—The redemption of a homestead from foreclosure sale by an assignee in bankruptcy does not enure to the benefit of the bankrupt and his assigns.

*Davis, O'Brien & Wilson,* for plaintiff.

*Geo. L. & Chas. E. Otis,* for defendant.

NELSON, J. The plaintiff brings his action of ejectment to recover the property hereinafter described, which is tried by the court without a jury.

It is admitted the plaintiff, on December, 26, 1864, was seized of the property described as block five (5) in the platted town of "Centre City," in the state of Minnesota. On that day he conveyed it to Louis Shogren and John Shogren, together with lots 1, 2, 3, 4 and 5, in block 4, in that town. On July 17, 1868, Louis and John Shogren gave a mortgage of all this property to J. N. Castle, who assigned it to H. F. Noyes, October 10, 1868. This mortgage was foreclosed by advertisement under the laws of Minnesota, and on April 23, 1870, the mortgaged property was sold at public auction, and was bid in by H. F. Noyes, to whom a certificate was given by the sheriff, dated May 12, 1870. The sale, however, was subject to the redemption provided by law. The property was sold by the sheriff in a body, not in separate lots or tracts, and the published notice of foreclosure sale, in specifying the amount claimed to be due, included therein the debt, interest, and $50 attorney's fees, whereas, the mortgage, in terms, stipulated for $25 attorney's fees. Two certificates were issued to the purchaser—the first, executed by the sheriff, but not in his official capacity; the second, properly executed, to cure defects. The second certificate, of the same date as the first, was assigned on June 25, 1870, by H. F. Noyes—one-half to Louis Torenus, one-fourth to I. E. Staples, and one-fourth to W. G. Bronson. All the aforesaid instruments were duly recorded.

On May 12, 1869, John Shogren and wife executed a deed of the property embraced in the mortgage to Louis Shogren. Louis Shogren was adjudged a bankrupt June 14, 1870, on a petition filed on the third day of the same month, and

Enoch Horton was appointed assignee, and an assignment was made to him of the bankrupt's estate, by the register in bankruptcy, August 16, 1870, and he filed a certificate of exempt property on August 23, 1870. Torenus, Staples and Bronson submitted exceptions to this certificate, and after argument, on February 18, 1871, an order was entered setting aside the designation of exempt property, deciding that block five (5) was the homestead of the bankrupt, and directing the assignee to set it aside. On May 19, 1871, the bankrupt and wife conveyed block five (5) to the plaintiff, and under this deed he claims title.

Horton, the assignee, having first obtained an order therefor from the court, redeemed from Torenus, Staples and Bronson, who held the certificate, the property mentioned therein, including block five, (5,) on April 21, 1871, three days before the equity of redemption vested in the bankrupt expired. He was compelled to pay to them the full amount, as the property was originally sold in one body, and to redeem with the other premises block five, (5,) the homestead, in which the bankrupt had an equity of redemption only.

The time for redemption by the bankrupt expired April 23, 1871, and no steps were taken by him to perfect his title to block 5, thus set apart to him as a homestead. He allowed the time for redemption to lapse, and the assignee obtained an order June 20, 1871, to sell the property in block 4. He, however, sold not only this property, but block 5 also, which was not included in the order, and on October 23, 1872, the sale was confirmed. At this sale all the property was purchased by Torenus, and the assignee executed to him a deed October 3, 1872. Torenus conveyed to the defendant Halberg October 23, 1873, and Halberg conveyed to defendant Peterson May 12, 1873. This controversy is with reference to the title to block five (5.)

The plaintiff urges—*First*, that the foreclosure and sale under the advertisement was void, for the reason that a larger attorney's fee was claimed than stipulated in the mortgage; *second*, that the same was void for the further reason that the

property was not sold in separate parcels, or tracts, as the statute required; *third,* that the redemption of the homestead from the sale enured to the benefit of the bankrupt and his assigns, and satisfied and cancelled the mortgage, and all title derived under it.

It is sufficient to say, upon the first two propositions, that the foreclosure was regular. There is no fraud charged, and it does not appear that the other party was prejudiced by the insertion of $50, instead of $25, as attorney's fees. The mistake is not such as will disturb the sale; neither will it be set aside, for the reason that the tracts were not sold separately. The section of the law requiring the sale of separate and distinct tracts in separate parcels is directory, and the sale will not be disturbed unless it was sold fraudulently, or it is shown that the mortgagor or owner of the equity of redemption was privileged thereby. 24 Minn. R. 281. It does not appear that the sale of the separate tracts in a body was the result of actual fraud, and it is not shown that Shogren was prejudiced thereby. He made no effort, as before stated, to secure his homestead, which was subject to the mortgage.

The third proposition cannot be sustained. The assignee redeemed the mortgaged property from the foreclosure sale, by virtue of the bankrupt law, under the order of the court. The equity of redemption to a portion of the mortgaged property was vested in the assignee as the representative of the estate of the bankrupt, and, under the authority of the bankrupt act, he was ordered to redeem. The rule in this state is, that a person having an equity of redemption in a part of real estate sold may redeem from the sale, and this property being sold in a body and for one price, the assignee was compelled, in order to redeem the only property to which he had any right, to pay the full amount of the bid, and take a certificate of redemption for the whole property. In doing this he took, by the redemption, block five, (5,) subject to Shogren's right to redeem from him. He was not authorized by this order of the court to redeem for the benefit of any

but the creditors of the bankrupt, and Shogren's equity of redemption in block five (5) was not destroyed.

The assignee is not governed by the state statute regulating the proceedings necessary to be followed by a mortgagor or creditors in redeeming. Of course the law prescribing the time within which the right of redemption can be exercised will apply, and it cannot be extended by the bankrupt courts. Having full control over the bankrupt's estate after adjudication, the law itself and the spirit and object of it govern the court in the exercise of its jurisdiction, necessary "to collect all the assets of the bankrupt, * * * liquidation of liens, * * * and to the marshaling and disposition of the different funds and assets, so as to secure the rights of all parties," etc. Section 1, Bankrupt Law.

It is the duty of the bankrupt court to protect the rights and interests of the bankrupt, as well as the creditors, and secure to the former all the law allows in the way of exemptions, but no more. The assignee had no title by virtue of the assignment to him of the block five, (5,) which was declared to be the homestead.

The decision of the bankrupt court did not enlarge the present interest of the bankrupt in this homestead. His right, title and interest therein were only an equity of redemption, and by the redemption from Torenus and others the assignee held this block subject to this right, and the bankrupt, by proper proceedings, could have had his interest adjusted before he lost it. His homestead right in block 5 was fully recognized by the court two months before the time for redemption expired, and the bankrupt made no effort to ascertain the amount necesaary to redeem it.

The homestead exemption act (Minn. Rev. St. § 2) provides that "such exemption shall not extend to any mortgage thereon lawfully obtained." The bankrupt court, on application, in marshaling the assets, would have, by appraisement or otherwise, fixed the sum necessary to be paid in order to entitle the bankrupt to the homestead, free from all liens.

Instead of applying to the court, the bankrupt allowed his

right of redemption to expire, and therefore the plaintiff took nothing by the deed executed May 12, 1871.

Judgment will be entered in favor of the defendants.